IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

|                                          |     |                              |
|------------------------------------------|-----|------------------------------|
| **ALTON M. INGLET, JR.,**                | §   |                              |
|                                          | §   |                              |
|                                          | §   |                              |
| **Plaintiff,**                           | §   |                              |
|                                          | §   |                              |
| **vs.**                                  | §   | **Civil Action No. 6:08-CV-014-C** |
|                                          | §   | **ECF**                      |
|                                          | §   |                              |
| **MICHAEL J. ASTRUE,**                   | §   |                              |
| **Commissioner of Social Security,**     | §   |                              |
|                                          | §   |                              |
| **Defendant.**                           | §   |                              |

## REPORT AND RECOMMENDATION

**THIS CASE** is before the court upon Plaintiff's complaint filed March 31, 2008, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits and for supplemental security income ("SSI") benefits under Title II and Title XVI of the Social Security Act. On April 1, 2008, the United States district judge, pursuant to 28 U.S.C. § 636(b), reassigned this case to the United States magistrate judge for all further proceedings. Plaintiff filed a brief in support of his complaint on September 6, 2008, Defendant filed a brief on September 24, 2008, and Plaintiff filed his reply on October 2, 2008. This court has considered the pleadings, the briefs, and the administrative record and recommends that the United States district judge reverse the Commissioner's decision and remand this case for further administrative proceedings.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for disability insurance benefits and for SSI benefits on August 1, 2005, alleging disability beginning June 11, 2004; this date was later amended to January 22, 2005. Tr. 39, 135-39.  Plaintiff's applications were denied initially and upon reconsideration.  Tr. 54-58, 61-65.  Plaintiff filed a Request for Hearing by Administrative Law Judge on March 12, 2006, and this case came for hearing before the Administrative Law Judge ("ALJ") on June 26, 2006.  Tr. 39, 66-67, 503-33.  Plaintiff, represented by an attorney, testified in his own behalf.  Tr. 506-23. Michael Driscoll, a vocational expert ("VE"), appeared and testified as well.  Tr. 523-32.  The ALJ issued a decision unfavorable to Plaintiff on July 14, 2006.  Tr. 36-49.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that:  Plaintiff met the disability insured status requirements for disability insurance benefits through September 30, 2008.  Tr. 40. However, the ultimate issue for SSI purposes is whether Plaintiff has been under a disability as of or subsequent to August 1, 2005, the date of the SSI application.  *Id*.  Plaintiff had not engaged in substantial gainful activity at any time since January 22, 2005.  Tr. 48.  Plaintiff has "severe" impairments, including diabetes mellitus, bi-lateral carpal tunnel syndrome, right shoulder rotator cuff tear, left ankle fracture, and schizophrenia.  Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  Tr. 41, 48.  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p.  Tr. 41.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible.  Tr. 45, 48.

The ALJ found that Plaintiff could not return to his past relevant work as a telephone wiring factory worker, a dishwasher, a box builder, or a plumber's helper.  Tr. 46, 48.  He noted that Plaintiff was considered a "younger individual" with a limited eighth-grade education.  20 C.F.R. §§ 416.963, 416.964; Tr. 47-48.

The ALJ found that Plaintiff retained the RFC to perform the requirements of light work activity, limited to jobs that do not require: climbing of scaffolds, ladders, or ropes; lifting more than 10 pounds occasionally solely with the right upper extremity; sitting for more than 30 minutes at one time without the opportunity to stand in addition to a lunch and the normal legal breaks during the workday; standing/walking for more than 4 hours out of an 8-hour workday; working above shoulder level with the upper right dominant extremity; repetitively pushing, pulling, or extended reaching with the right dominant upper extremity; fingering objects more than frequently; working at unguarded heights or near unguarded hazardous mechanical equipment; or performing more than the lower end of detailed instructions  Tr. 46, 48.  Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments.  Tr. 47, 49.  He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of micro-film document preparer, with 106,000 jobs nationally; food and beverage order clerk, with 182,000 jobs nationally; and telephone quotations clerk, with 160,000 jobs nationally. *Id*.  The ALJ, therefore, concluded that

Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision.  *Id.*

Plaintiff appealed the ALJ's decision and the Appeals Council remanded the case to an ALJ for further proceedings.  Tr. 50-53.

This case came for the remand disability hearing before the ALJ on July 26, 2007.  Tr. 18, 534-63.  Plaintiff, represented by an attorney, again testified in his own behalf.  Tr. 538-46.  John Simonds, a medical expert ("ME"), and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well.  Tr. 546-62.  The ALJ issued a decision unfavorable to Plaintiff on September 5, 2007.  Tr. 15-28.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that:  Plaintiff met the disability insured status requirements for disability insurance benefits through September 30, 2008, and Plaintiff had not engaged in substantial gainful activity at any time since January 22, 2005.  Tr. 20. Plaintiff has "severe" impairments, including diabetes mellitus, bi-lateral carpal tunnel syndrome, right shoulder rotator cuff tear, left ankle fracture, and schizophrenia.  Tr. 21.  Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id.* Therefore, the ALJ was required to determine whether Plaintiff retained the RFC to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p.  *Id.*

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 26.

The ALJ found that Plaintiff could not return to his past relevant work as a kitchen helper, laborer, machine operator, boxing machine operator, or a plumber's helper. Tr. 26. He noted that Plaintiff was considered a "younger individual" with a limited education. 20 C.F.R. §§ 416.963, 416.964; Tr. 27.

The ALJ found that Plaintiff retained the RFC to perform the requirements of light work activity, limited to jobs that do not require: climbing of scaffolds, ladders, or ropes; lifting more than 10 pounds occasionally solely with the right upper extremity; sitting for more than 30 minutes at one time without the opportunity to stand in addition to a lunch and the normal legal breaks during the workday; standing/walking for more than 4 hours out of an 8-hour workday; working above shoulder level with the upper right dominant extremity; repetitively pushing, pulling, or performing extended reaching with the right dominant upper extremity; handling or fingering objects more than frequently; working at unguarded heights or near unguarded hazardous mechanical equipment; working with more than a mildly decreased ability to maintain concentration and attention; understanding, remembering, and carrying out more than simple instructions; having more than superficial interaction with co-workers; or interacting with the public. Tr. 21. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 27-28. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of small products assembler, with 103,000 jobs nationally; hardware assembler, with 94,000 jobs nationally; and injection mold machine off bearer, with 48,000 jobs nationally. *Id*. The ALJ,

therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision.  Tr. 28.

Plaintiff submitted a Request for Review of Hearing Decision/Order on October 1, 2007. Tr. 13-14.  After granting a 25-day extension, the Appeals Council denied Plaintiff's request and issued its opinion on February 13, 2008, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision.  Tr. 7-12.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On March 31, 2008, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 27-28, 49.

### III.   DISCUSSION

Plaintiff claims that the ALJ erred by failing to properly weigh the medical opinion of the treating physician and by failing to find that Plaintiff met the requirements of Listing 12.05C of the Listing of Impairments. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.**   **Whether the ALJ erred in weighing and rejecting the opinion of Dr. George Tipton, Plaintiff's treating physician**.

Plaintiff alleges that the ALJ erred in weighing and rejecting the opinion of his treating physician, Dr. Tipton, who opined that Plaintiff would miss at least three days of work per month due to his mental impairments and who also opined that Plaintiff's mental impairments imposed functional limitations on several work-related activities.

The record demonstrates that Dr. Tipton completed a mental impairment questionnaire on July 18, 2007. Tr. 479-84. Dr. Tipton indicated that he saw Plaintiff once every three months for medication renewal. Tr. 481. He opined that Plaintiff's diagnosis on Axis I was schizoaffective disorder.[1] He opined that Plaintiff had a Global Assessment of Functioning ("GAF")[2] score of 46 on Axis V.[3] Dr. Tipton noted that Plaintiff had several signs and symptoms including mood, appetite, and sleep disturbance; hallucinations or delusions; anhedonia; paranoia; difficulty thinking or concentrating; suicidal ideation or attempts; disturbance of perception, thought, or behavior; social withdrawal; illogical thinking; decreased energy; and hostility and irritability. *Id*. Dr. Tipton did not indicate any clinical findings or results of mental status examinations to demonstrate the severity of Plaintiff's impairments and symptoms. *Id*. He opined that Plaintiff seemed to be doing well on his current medications. Tr. 482. He noted that Plaintiff did not have a low IQ or reduced mental functioning. *Id*. Dr. Tipton indicated that Plaintiff would be absent from work more than three times per month because of his impairments and would have trouble working at a regular job on a sustained basis but did not explain the basis for these opinions. *Id*. Dr. Tipton also opined that Plaintiff was markedly impaired in the activities of daily living; extremely impaired in maintaining social functioning; often limited with regard to concentration, persistence, or pace; and had experienced three or more episodes of decompensation. Tr. 483.

---

[1]    The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.

[2]    The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV"). This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id*.

[3]    A GAF of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 324.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456.[4] Pursuant to Soc. Sec. Ruling 96-2p (July 2, 1996) ("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). The opinion of

---

[4]     In unpublished decisions the Fifth Circuit has noted that the ALJ need not consider these six factors when there is competing first-hand medical evidence and where the ALJ finds that one doctor's opinion is more well-supported than that of another treating or examining physician. *See*, *e.g.*, *Ward v. Barnhart*, 192 Fed. Appx. 305, 308 (5th Cir. 2006); *Walker v. Barnhart*, 158 Fed. Appx. 534 (5th Cir. 2005). However, this is not a case involving competing first-hand medical evidence.

a treating source is generally given more weight than a non-examining source.   20 C.F.R. § 404.1527(d)(1).

A "medical advisor" is a neutral consultant who, at the request of the Social Security Administration, reviews a claimant's medical records, explains or clarifies information reflected therein, and expresses expert opinions as to the nature and severity of impairments and whether such impairments equal the criteria of any impairment in the Listing of Impairments.   20 C.F.R. §§ 404.1527(f)(2)(iii), 416.912(b)(6), and 416.927(f)(2)(iii).   When a medical professional functions as an expert witness in the course of an evidentiary hearing before an ALJ, Social Security Ruling 96-6p designates the medical professional as a "medical expert."   Social Security Ruling 96-6p (July 2, 1996) ("SR 96-6p").   An ALJ may rely upon testimony of a medical adviser when evaluating the nature and extent of a claimant's impairments.   *Richardson v. Perales,* 402 U.S. 389, 408 (1971).   *See Masterson,* 309 F.3d at 270 (relying in part on the testimony of an ME in determining the limitations imposed by the claimant's impairment); *Leggett v. Chater,* 67 F.3d 558, 565 (5th Cir. 1995) (relied in part upon the testimony of an ME ).   The ALJ did not err in considering the opinions of the non-examining ME in formulating his RFC assessment.   However, the Plaintiff argues that the ALJ did err in relying upon the opinion of the ME while inappropriately discounting or rejecting the opinions of the treating providers and by failing to discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d).

Good cause to disregard the opinions of a treating physician is found where such opinions "are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence."   *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).   SSR 96-2p provides that a medical source statement from a treating source which is well-supported by medically acceptable evidence and which is not inconsistent with other substantial evidence in the record is entitled to controlling weight.   *See* SSR 96-2p.   This ruling further explains:

> It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

*Id.* The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)).

The record indicates that Plaintiff underwent a psychological consultative examination by Pennissi P. Taylor, Ph.D., on March 29, 2007. Tr. 453-58. Dr. Taylor noted Plaintiff's report of a previous suicide attempt, a diagnosis of paranoid schizophrenia, previous hospitalizations, and his thinking of hurting people who have done him wrong. Tr. 454. Dr. Taylor noted Plaintiff's report of not getting along well with people. *Id.* He also noted Plaintiff's report of quitting school at the end of his 9th grade year, failing the first grade, eventually getting his general education diploma ("GED"), and receipt of special education services while in school. *Id.* Dr. Taylor noted that upon examination, Plaintiff's mood was somewhat anxious with congruent mood; normal speech; and a report of past suicidal ideation and hearing voices telling him to hurt people who have hurt him. Tr. 455. He noted that Plaintiff was oriented to time and place, showed good concentration and attention, and appeared to have an intact short term memory. *Id.* Dr. Taylor also opined that Plaintiff's "insight and judgment appear to be impaired." *Id.* He noted that Plaintiff underwent testing for assessing intellectual ability and that his non-verbal skill fell in the borderline range of functioning, while his full-scale score fell within the "extremely low" range, his arithmetic score fell in the borderline range, and his general level of intellectual functioning fell within the extremely low range. Tr. 456. Dr. Taylor opined that Plaintiff has "extremely lowly cognitive ability and academic ability that will most likely not improve with time." Tr. 457.

The ME, Dr. Simonds, testified that based on the records, Plaintiff has two mental conditions – borderline intellectual functioning and schizoaffective disorder. Tr. 550. Dr. Simonds opined that Plaintiff would not meet a listing in the Listing of Impairments but would have limitations with superficial contact with the public and simple work because of his borderline IQ. Tr. 551. Dr. Simonds noted that Plaintiff does not have a diagnosis of mental retardation. *Id.*

In his opinion, citing the opinion of Dr. Simonds, the ALJ found that Plaintiff should have "no more than superficial contact with the public." Tr. 23. He also indicated that although Dr. Tipton had opined that Plaintiff's mental impairment would cause him to miss three days of work per month, Dr. Tipton did not "back that statement up with any reports." *Id.* The ALJ also found that the GAF score of 35 was inconsistent with the claimant's reported symptoms. The ALJ ultimately found that Plaintiff's mental impairments caused mild restrictions in completing daily living activities; marked difficulties in social functioning; moderate difficulties with concentration, persistence, or pace; and one episode of decompensation. Tr. 21. The ALJ indicated that Plaintiff should not be required to work with more than a mildly decreased ability to maintain concentration and attention; should not be required to understand, remember, and carry out more than simple instruction; should not be required to have more than superficial interaction with co-workers; and should not be required to interact with the public. *Id.* The ALJ's opinion addresses reasons for declining to accept all of the limitations noted by Dr. Tipton in the mental impairment form he completed, albeit in a cursory manner. Dr. Tipton's RFC assessment is the only statement in the record by a treating or examining source that indicates the specific limitations imposed by Plaintiff's impairments, and the ALJ virtually rejected that statement. The ALJ relied primarily upon the opinions of the non-examining ME and, to a lesser extent, the non-examining and non-treating state agency medical consultants ("SAMCs") in determining the limitations imposed by Plaintiff's impairments.

In *Myers* the Commissioner's decision was reversed and remanded where the ALJ had "summarily rejected the opinions of [the claimant's] treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." 238 F.3d at 621.  In *Leggett* the Fifth Circuit found that the ALJ had good cause to give little weight to the opinion of a treating physician which was not consistent with other opinions of treating physicians, the objective medical evidence, and the claimant's claims regarding his physical abilities.  67 F.3d 558, 566 (5th Cir. 1995).  Here, the ALJ indicated his disagreement with Dr. Tipton's opinion that Plaintiff's mental impairment would cause him to miss more than three days of work per month and further indicated that "there are no reports showing that the claimant's schizoaffective disorder causes any work related limitations."  Tr. 25.  The ALJ's opinion also indicated that he accepted the opinion of the SAMCs as to the restrictions imposed by Plaintiff's mental impairments in his activities of daily living; maintaining social functioning; maintaining concentration, persistence, and pace; and in causing episodes of decompensation.  *Id.*

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. Tex. 1995) (internal citations and quotation omitted).   "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  The task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*  The ALJ's opinion indicates some basis for the weight attributed to certain portions of  Dr. Tipton's opinion.  However, the ALJ's opinion did not discuss

the degree to which Dr. Tipton's opinion was consistent with other medical opinions in the record, such as the psychological consultative examination by Dr. Taylor. Moreover, the ALJ's opinion regarding the limitations imposed by Plaintiff's impairments indicates that he accorded greater weight to the opinions of the non-treating physicians, including the SAMCs and the ME, while according very little weight to the opinion of the treating physician, Dr. Tipton, without clearly considering each of the six factors set forth in 20 C.F.R. § 404.1527(d) and *Newton* and without fully describing his reasons for doing so. "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton,* 209 F.3d at 453. "An ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization." *Myers,* 238 F.3d at 621 (citing *Newton*, 209 F.3d at 456). The record does not indicate that the ALJ demonstrated good cause for his weighing of Dr. Tipton's opinion nor does the ALJ make a factual determination based on his assessment of competing first-hand medical evidence. Rather, the ALJ relied a great deal on the opinion of Dr. Simonds, a non-examining, non-treating ME. The instant matter is thus similar to *Myers* and *Newton*, "where the ALJ summarily rejected the opinions of [Plaintiff's] treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." *Id*.

The ALJ's determination of Plaintiff's RFC is based primarily on the opinions of the non-treating and non-examining ME. The ALJ's RFC assessment is not based upon limitations noted or reflected in the opinions or medical evidence of any treating or examining source, nor does the ALJ adequately explain his reasons for rejecting the opinion of Dr. Tipton regarding the limitations

imposed by Plaintiff's mental impairments.  Instead, the ALJ relied heavily upon the opinion of the SAMCs and the non-examining ME.

Thus, by relying only primarily upon the opinions of physicians who have not treated or examined the Plaintiff to reject the opinion of the Plaintiff's treating physician and by then failing to clearly consider each of the six factors set forth in 20 C.F.R § 404.1527(d)(2), the ALJ erred.

The court finds that the ALJ's decision is not supported by substantial evidence and that the ALJ did not apply the correct legal standards in making his RFC assessment.  Upon remand, the ALJ should clearly consider each of the six factors set forth in 20 C.F.R. § 404.1527(d)(2) and/or consider whether to obtain or update an opinion of a treating or examining physician regarding Plaintiff's impairments and limitations

**B.      Whether the ALJ erred at step 3 by failing to find that Plaintiff has met the criteria of Section 12.05 of the Listing of Impairments.**

Plaintiff also alleges that the ALJ erred by failing to find that he met the criteria of Section 12.05 of the Listing of Impairments for demonstrative presumptive disability based on his IQ scores.

Section 12.05 of the Listing of Impairments, dealing with mental retardation, defines this impairment as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  This section indicates that presumptive disability under the Listing of Impairments is established "when the requirements in A, B, C, or D are satisfied."  *Id.*  The criteria of Section 12.05C include a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C.  "A claimant must prove both of these conditions in order to meet his burden under step three."  *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citing *Sullivan v.*

*Zebley*, 110 S. Ct. 885, 891-92 (1990)).  "The claimant must provide medical findings that support each of the criteria for the equivalent impairment determination."   *Id.* (citing 20 C.F.R. § 404.1526(a)).

Plaintiff claims that he has met the requirements of Section 12.05C of the Listing of Impairments, having shown a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C.  The ALJ found that Plaintiff's impairments or combination of impairments did not meet or equal in severity any section of the Listing of Impairments, including Sections 12.03 and 12.05 of the Listing of Impairments.

Section 12.00(A) describes the structure for evaluation of mental impairments under § 12.05 of the Listing Impairments:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).   If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

*See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(A).  Section 12.05 clearly provides that in order to meet the Listing criteria for mental retardation, a claimant's mental impairment must first satisfy the diagnostic criteria – that is, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . ."  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05.

The Commissioner's *Programs Operations Manual System* ("*POMS*"),[5] describes the relationship of adaptive behavior to IQ scores.  *See POMS* § DI 24515.056(D)(2).  This  section notes:

> The term "adaptive behavior" refers to the individual's progress in acquiring mental, academic, social, and personal skills as compared with other unimpaired individuals of his/her same age.  Indicators of adaptive behavior include childhood development milestones (e.g., when did the individual first crawl, walk, tie shoes, feed/dress self, etc.), as well as educational and social achievements.  The judgment of an MC [medical consultant] is necessary to affirm that adaptive behavior is consistent with IQ test results.

*POMS* § DI 24515.056(D)(2).

Section 12.00(D)(6) further describes the role that intelligence tests play in evaluating mental retardation for a determination of presumptive disability, noting that "[t]he  results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning.  However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."  20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.00(D)(6)(a).  Thus, although Plaintiff argues that his IQ scores are sufficient to meet the criteria of 12.05C, IQ tests alone do not demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning."  Plaintiff's IQ scores form a part of the data necessary to verify the presence of mental retardation but function as "only part of the overall assessment."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.00(D)(6).  The Eighth Circuit found, for example, that an ALJ may reject IQ scores that are inconsistent with a claimant's daily activities and behavior, especially when the scores are based on a one-time examination by a non-

---

[5]        The POMS  may be found at the Social  Security Administration Policy Information Site, located at:  http://policy.ssa.gov/poms.nsf/partlist!OpenView.

treating psychologist. *See Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998) (finding the ALJ properly rejected IQ scores that were the product of one meeting with a non-treating psychologist and were inconsistent with claimant's daily activities, and no medical records indicated that she was mentally retarded prior to age 22); *see also, Muse*, 925 F.2d at 790; *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).

In this case, Dr. Simonds, the ME, testified that Plaintiff's mental impairments, even considering his IQ scores, did not meet or equal in severity the requirements of any section of the Listing of Impairments.  Tr. 550-51.  The ME correctly noted that there are no records indicating mental retardation existing in the developmental period.  Tr. 550.  The ME indicated that he considered not only Plaintiff's IQ scores, but such scores combined with his other mental impairments in evaluating whether such impairments met the criterion of Section 12.05 of the Listing of Impairments.  Tr. 551.  While evaluation of the consistency of IQ scores and adaptive behavior is an issue for a medical consultant, the ALJ may properly consider the opinions of such consultants with the claimant's activities and work history.  *Compare POMS*, § DI 24515.056(D)(2) with *Higgins v. Barnhart,* 288 F. Supp. 2d 811, 819 (S.D. Tex. 2002) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)) (finding that the claimant's ability to work as a housekeeper, despite her mental limitations, constituted additional *indicia* militating against a finding that her adaptive functioning was deficient to a degree that would be reasonably considered disabling).  The *POMS* provides that "Listing 12.05C is based on a combination of an IQ score with an additional significant mental or physical impairment.  The criteria for this paragraph are such that a medical equivalence determination would very rarely be required." *POMS* § DI 24515.056 (D)(1)(c).  In any case, Section 12.00(D)(6) indicates that the ALJ should consider the narrative report that accompanies the test results, which should comment on whether the IQ scores are considered valid

and consistent with the developmental history and the degree of functional limitation.  20 C.F.R. Part 4, Subpt. P, App. 1, § 12.00(D)(6).

In an unpublished opinion the Fifth Circuit specifically has noted that "[to meet listing 12.05C, [the claimant's] impairment must satisfy the introductory paragraph of listing 12.05, which states that 'mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22.'"  *Arce v. Barnhart*, 185 Fed. Appx. 437, 438 (5th Cir. 2006) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05).  Plaintiff alleges that his school performance, including repeating the first grade, special education classes, and leaving school after the ninth grade are sufficient to demonstrate deficits in adaptive functioning before age 22.  Dr. Taylor's report indicates Plaintiff's verbal IQ score of 70, performance IQ of 74, and full scale IQ of 69.  Tr. 457.  Dr. Taylor did not indicate a diagnosis of mental retardation on Axis II.[6]  The DSM-IV indicates that "Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning."[7] Dr. Taylor noted that Plaintiff's reading scores fell within the low average range of functioning, his spelling score fell within the borderline range of functioning, and his arithmetic score also fell within the range of borderline range of functioning.  Tr. 457.  Although mental retardation qualifies as a non-exertional impairment, "'below-average intelligence alone does not constitute a non-exertional impairment,'" *Selders*, 914 F.2d at *619 (*quoting *Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990)).

As noted above, Plaintiff must prove that he meets the criteria of § 12.05C of the Listing of Impairments in order to meet his burden under step three.  *Selders*, 914 F.2d at 619 (citing *Sullivan*,

---

[6]      *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 743.

[7]      *Id.* at 42.

493 U.S. at 521). He must provide medical findings that support each of the criteria for the equivalent impairment determination. *Id.* He must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05. The record demonstrates that testing indicated an IQ of 69 through 74 and a "severe" mental impairment – schizoaffective disorder. However, the record also fails to demonstrate that Plaintiff manifested deficits in adaptive functioning during the developmental period. The record demonstrates that neither the psychological examiner nor Plaintiff's treating physician found a diagnosis on Axis II. There was substantial evidence in the record to support the ALJ's finding on that issue. The court finds that the ALJ did not err in making his step 3 finding and in finding that Plaintiff did not demonstrate presumptive disability by meeting the criteria of Section 12.05C of the Listing of Impairments.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States district judge reverse the Commissioner's decision and remand this case for further proceedings in accordance with this recommendation.

Plaintiff having refused consent to having the United States magistrate judge conduct all further proceedings in this case, this case is **TRANSFERRED** back to the docket of the United States district judge

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates

by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

DATED this 28th day of August, 2009.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**